UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| HENRIETTA MULLIGAN, as Surviving Parent and Next Friend of TIONA MULLIGAN, and as the Administrator of the ESTATE OF TIONA MULLIGAN,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. **CV422-294** |

**COMPLAINT FOR WRONGFUL DEATH AND ESTATE DAMAGES**

Plaintiff shows the Court as follows:

1.

This is a medical malpractice wrongful death and estate damages case against officers, agents, employees, and representatives of Defendant USA for failures in timely diagnosing and treating Tiona Mulligan on January 22, 23, and 24, 2018 in the Winn Army Community Hospital ("WACH") and in failing to timely facilitate her transfer from the WACH Intermediate Care Ward ("ICW") to another medical facility for a higher level of care in an Intensive Care Unit ("ICU") setting. Tiona Mulligan died of cardiorespiratory failure due to excessive and extended hypoxia (lack of adequate oxygenation and ventilation) and a pulmonary embolus from a pre-existing deep vein thrombosis in her lower leg on or around 1:00 p.m. January 24, 2018, at Winn Army Community Hospital in Ft. Stewart, Georgia.

2.

This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C § 2671-2680, and jurisdiction is proper in this Court under 28 U.S.C. § 1346(b). This action is brought for money

damages that arise from personal injury and wrongful death that were caused by the negligent or wrongful acts or omissions of an employee or employees of the United States government while acting within the scope of their office or employment, under circumstances where The United States of America, if a private person, would be liable to Plaintiff in accordance with Georgia law.

3.

Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. § 1402(b).

4.

Plaintiff Henrietta Mulligan, surviving parent and next friend of Tiona Mulligan, has been a resident of Liberty County, Georgia as was her daughter Tiona Mulligan, since at least 2017.

5.

Plaintiff Henrietta Mulligan is the Administrator of the Estate of Tiona Mulligan and was duly appointed as such by the Probate Court of Liberty County, Georgia on January 7, 2020.

6.

The Defendant is the United States of America, its officers, agents, employees, and representatives.

7.

At all times mentioned herein, Winn Army Community Hospital ("WACH") at Fort Stewart, Georgia, was an entity and / or agency of the United States Department of the Army, was an entity and / or agency of Defendant United States of America (hereinafter "USA"). Defendant USA may be served with process through the United States Attorney General in Washington, D.C., Merrick B. Garland, 950 Pennsylvania Ave, N.W., Washington, D.C. 20530-0001 and the United States Attorney David H. Estes or Assistant United States Attorney or civil process clerk of the office of the United States Attorney for the Southern District of Georgia, 22 Barnard Street, Suite

300, Savannah, Georgia 31401, all by certified mail return receipt requested. The Department of the Army may be served with process through Jonathan DeJesus, SJA Claims Division, 1791 Gulick Avenue, Building 709, Fort Stewart, GA 31314, by certified mail return receipt requested.

8.

Plaintiff Henrietta Mulligan, in her capacity as surviving parent and next friend of Tiona Mulligan, filed a timely administrative claim for the wrongful death of Tiona Mulligan with the USA / Department of the Army on January 21, 2020, for a "sum certain" of three million dollars ($3,000,000.00). See Claim for Wrongful Death attached hereto as "Exhibit A". Said claim was received and acknowledged on January 22, 2020 by Ms. Verlisha Sipp, Tort Civil Litigation Paralegal, Department of the Army, Office of the Staff Judge Advocate, 1791 Gulick Avenue, Building 709, Fort Stewart, Georgia 31314. See acknowledgment letter attached hereto as "Exhibit B".

9.

Plaintiff Henrietta Mulligan, in her capacity as Administrator of the Estate of Tiona Mulligan, filed a timely administrative claim for estate damages incurred by the Estate of Tiona Mulligan with the USA / Department of the Army on January 21, 2020, for a "sum certain" of one million dollars ($1,000,000.00). See Claim for Estate Damages attached hereto as "Exhibit C". Said claim was received and acknowledged on January 22, 2020 by Ms. Verlisha Sipp, Department of the Army, Tort Civil Litigation Paralegal, Office of the Staff Judge Advocate, 1791 Gulick Avenue, Building 709, Fort Stewart, Georgia 31314. See acknowledgment letter attached hereto as "Exhibit D".

10.

Plaintiff has exhausted her administrative remedies under the Federal Tort Claims Act and

has fully complied with the statutory prerequisites for bringing this tort action against The United States of America.

**FACTS**

11.

Tiona Mulligan, born in January of 1999, received the vast majority, if not all, of her healthcare in 2017 and 2018 at Winn Army Community Hospital ("WACH") in Ft. Stewart, Liberty County, Georgia because her father, Sergeant First Class Terry Mulligan, was an active duty member / soldier in the United States Army 3rd Infantry Division at Fort Stewart, Georgia.

12.

On January 16, 2018, Tiona Mulligan presented to the WACH Emergency Department ("ED") with a documented chief complaint of sore throat with cold like symptoms with vital signs documented as Temp: 100.2; BP: 104 / 70; HR: 109; Respiratory Rate: 15; O2 SAT: 97%. A rapid strep test was performed and reportedly resulted negative. She was diagnosed with pharyngitis and discharged to home with respiratory system and cardiovascular system noted as normal.

13.

On January 20, 2018, Tiona Mulligan presented again to the WACH ED with documented chief complaints of lightheadedness, sore throat, cough, and chest pain per the M.D.'s note. Her vital signs were documented as Temp: 103.1; BP: 100 / 60; HR: 123; Respiratory Rate: 18; O2 SAT: 97%. She was diagnosed with a viral syndrome and discharged to home.

14.

On January 22, 2018, at or around 7:45 a.m., Tiona Mulligan presented for a third time in six days to the WACH ED with a documented chief complaint of shortness of breath (SOB), fatigue, chest pain, dizziness, cough, and nausea, all noted to be constant. Her initial vital signs

were documented as Temp: 100.3; BP: 88 / 53; HR: 120; Respiratory Rate: 22, and O2 SAT: 89%. Decreased breath sounds were noted on auscultation. Tiona Mulligan's documented height was 63 inches and weight was approximately 315 pounds.

15.

It was apparent upon her presentation and initial workup in the WACH ED that Tiona Mulligan had ongoing multiple risk factors for Deep Vein Thrombosis / Pulmonary Embolus (DVT / PE) to include morbid obesity, daily birth control medication (oral contraceptives), and anti-depressant medication usage. Furthermore, she presented with numerous signs or symptoms of DVT / PE to include ongoing tachycardia (abnormally elevated heart rate), chest pain, shortness of breath, lightheadedness, hypoxemia, fever, and cough.

16.

WACH ED physician Dr. Abraham Fish ordered lab testing which included a chest x-ray, CBC / Diff, and a D-dimer around 8:20am on January 22, 2018.

17.

D-dimer is a fibrin degradation product which can be present in the blood and indicate a blood clot, or abnormal accumulation of blood, somewhere within the human body.

18.

The D-dimer lab result for Tiona Mulligan resulted in a value of 2912 which was approximately ten (10) times the high-end value of normal (230) based on the WACH laboratory normal value range of 0 to 230, which indicated there was a high probability of a blood clot somewhere within the body of Tiona Mulligan.

19.

As a result of the elevated D-dimer value, a CT Angiogram was performed of Tiona

5

Mulligan's chest which reportedly was negative for pulmonary embolus, but was positive for right upper, middle, and lower lung consolidations.

20.

WACH ED physician Dr. Abraham Fish documented "elevated d-dimer likely from PNA (pneumonia), doubt P.E."

21.

The chest x-ray reportedly showed right upper / mid lobe consolidation and was noted to be negative for PE.

22.

Tiona Mulligan's oxygen saturation levels were noted to decrease / desaturate on two occasions while in the ED upon being assisted to the bathroom.

23.

Antibiotics Ceftriaxone and Azithromycin were administered for "CAP" or Community Acquired Pneumonia, intravenous fluids were given, and Tiona Mulligan was admitted to the Intermediate Care Ward ("ICW") of WACH from the ED on or around 2:28 p.m. on January 22, 2018, to the services of Dustin K. Davis, CPT, M.D.

24.

Although the WACH ED records indicate the "plan" of care going forward for Tiona Mulligan was to include Lovenox (anticoagulant medication), there is no evidence Lovenox was given to Tiona Mulligan at any time within the ED or at any time thereafter from her admission to the ICW / hospital floor around 2:28 p.m. on January 22, 2018 through and until the time a code was called at WACH in the ICW on or around 12:00 p.m. / noon on January 24, 2018.

25.

It should also be noted that there is documentation after Tiona Mulligan's death at WACH on January 24, 2018, that an order for 40mg of Lovenox was canceled.

26.

Dr. Dustin K. Davis (CPT U.S. Army) dictated an Admission History and Physical at or around 2:49 p.m. that included the entry, "In the emergency department, she was also noted to have hypoxemia with oxygenation saturation 89% on room air" and "CTPA obtained due to elevated D-dimer and without PE, but showing the presence of infiltrate consistent with community-acquired pneumonia."

27.

The vital signs charted for Tiona Mulligan by Dr. Dustin K. Davis in his Admission History and Physical were Heart Rate: 120; BP: 88/53; Respiratory Rate: 22; Temp: 100.3, and O2 SAT: 89% on Room Air.

28.

The Hospital Course / Narrative Summary contained within the "MultiD Discharge Summary" and authored by Dustin K. Davis, CPT, M.D., indicated that Tiona Mulligan "continued to have hypoxemia" upon her admission to the hospital floor / ICW from the ED.

29.

Immediately following the entry by Dr. Dustin K. Davis in his Hospital Course / Narrative Summary of "She continued to have hypoxemia" (referring to the time of her initial admission around 2:28 p.m. on January 22, 2018 to the hospital floor / ICW and his hospitalist services), Dr. Davis entered the sentence, "On January 24, 2018 at 0800, the patient was noted to have acute worsening of hypoxemia."

30.

Within the "MultiD Discharge Summary" of Dr. Dustin K. Davis, under the section titled "Cause of Death" is documented the following:

| Immediate Cause (Final disease or condition resulting in death) | (Approximate Internal Onset to Death) |
|---|---|
| Cardiac Arrest | 1 Hour |
| Due to (or as a consequence of): | |
| Acute Hypoxemic Respiratory Failure | 2 Days |
| Due to (or as a consequence of): | |
| Acute Respiratory Distress Syndrome | 5 hours |
| Due to (or as a consequence of): | |
| Community-acquired pneumonia | 2 Days |

31.

Thus, Tiona Mulligan, based upon Dr. Davis' summary, and indicated in the immediately preceding paragraph, was in Acute Hypoxemic Respiratory Failure for 2 days prior to the cardiac arrest which caused her death on or around noon to 1 p.m. on January 24, 2018.

32.

Dr. Davis' Hospital Course / Narrative Summary also states, "The decision was made to intubate the patient (which is indicated in another area of the medical records to have been at 10:56 a.m. on January 24, 2018). Baptist Hospital in Jacksonville, Florida reportedly accepted the patient to the ICU (Intensive Care Unit) as the patient was determined to require a higher level of care."

33.

The document within the WACH records produced to Plaintiff's counsel titled "PATIENT TRANSFER ORDERS" (which has no time indicated), is signed by the transferring physician

Dustin Davis, M.D., and which most certainly was prepared sometime the morning of January 24, 2018, indicated the reason for transfer as "Hypoxemia requiring a higher level of care"; the diagnosis "Community Acquired Pneumonia / Acute Hypoxemic Respiratory Failure"; and the alternatives to transfer as "Remain in hospital without appropriate level of care."

34.

From the medical records produced by Defendant USA / Department of the Army / Winn Army Community Hospital, it is apparent that Tiona Mulligan remained as in-patient within the WACH ICW the entire 24 hours of January 23, 2018, as she was admitted to the ICW around 2:28 p.m. on January 22, 2018 from the WACH ED, and was still noted to be on the WACH floor (ICW) when Dr. Dustin Davis noted in his narrative summary, "On January 24, 2018 at 0800, the patient was noted to have acute worsening of hypoxemia."

35.

Regarding medical records produced by Defendant USA / Department of Army / Winn Army Community Hospital, none of the following documents (many of which should contain information pertinent to Tiona Mulligan's ongoing medical condition and care and treatment for January 23, 2018) the following have not been provided as of this time to Plaintiff's counsel despite at least four (4) written requests over the past several years:

   i.   Nursing Admission Assessment for date of 1/22/2018;

   ii.  Nursing Assessments for 1/22/2018 – 1/24/2018;

   iii. Nursing Notes for 1/22/2018 – 1/24/2018;

   iv.  Nursing Flow Sheets for 1/22/2018 – 1/24/2018;

   v.   Nursing Intake and Output Records for 1/22/2018 – 1/24/2018;

   vi.  Vital Signs Records for 1/22/2018 – 1/24/2018;

vii. Nursing Care Plans for 1/22/2018 – 1/24/2018;

viii. Medication Administration Record for 1/22/2018 – 1/24/2018;

ix. All Physician's Orders for 1/22/2018 – 1/24/2018; and

x. Physician Progress Notes for 1/22/2018 – 1/24/2018 (Excerpt Admission History & Physical and Medical Narrative Discharge Summary which have been produced)

36.

During her time at WACH between presentation to the WACH ED around 0745 hours on February 22, 2018 until her transfer to the Intermediate Care Ward (ICW) at WACH around 2:30 p.m. on January 22, 2018 and until and through the time of Tiona Mulligan's death in the WACH ICW around 1:00 p.m. on January 24, 2018 there is no record or evidence of a lower extremity ultrasound ever having been performed.

37.

On January 24, 2018, presumably before the central venous line was attempted to be placed by Dr. Dustin Davis (which was on or around 1200 hours / noon), Dr. Dustin Davis signed off on a Central Venous Catheter consent form in which the following was indicated:

Benefits : Access the circulation in order to monitor heart and lung functions and / or administer fluids and medications, save your child's life if he / she needs large fluid requirements.

Alternatives: Peripheral venous access which is less reliable and not suitable for administration of many cardiac medications.

38.

The Emergency Resuscitation Record indicated, in part, the following:

- The patient was located in the WACH ICW (ward)

- She had an initial Rhythm of Ventricle Tachycardia
- This was a witnessed arrest (This is also apparent from the note regarding the attempted Central Venous like placement as it was during this procedure that she went into cardiac arrest).
- CPR began at 1205 and ended at 1308 when the patient was pronounced dead.
- At the beginning of CPR, the patient had IV access consisting of one 20 gauge IV line and the patient had an Endotracheal Tube in place (on mechanical ventilator) which had been inserted at 1056 hours, approximately one hour before the code was called.
- At 1225 hours, approximately 20 minutes into the code, a #18 gauge intravenous line was placed in the right AC.

39.

The Georgia Death Certificate Worksheet completed by Dr. Difu Wu of the Pathology Department at WACH indicated that an autopsy was performed and that the cause of death was:

|   |   | Interval of Onset to Death |
|---|---|---|
| a. | Pulmonary Embolism | Minutes |
| b. | Deep Vein Thrombosis | Hours – Days |
| c. | Pneumonia | Days |

40.

The autopsy report prepared by Dalia R. Merced – Bruno, M.D. indicated, in part, that the Final Autopsy Diagnoses were:

  i. Pulmonary Thrombosis, Bilateral
 ii. Deep Vein Thrombosis, Left
iii. Ongoing Pneumonia

11

    iv.    Morbid Obesity

**NEGLIGENCE OF DEFENDANT USA VIA EMPLOYEES AND AGENTS OF USA**

41.

The allegations set forth in paragraphs 1 through 40 are realleged and incorporated herein by reference.

42.

On January 22, 23, and 24, 2018 in the WACH ICW, Dustin K. Davis, M.D., along with any other physicians interacting with Tiona Mulligan in the WACH ICW, created and maintained a physician-patient relationship with Tiona Mulligan.

43.

On January 22, 23, and 24, 2018, Dustin K. Davis, M.D., and any other physicians providing medical care and treatment to patient Tiona Mulligan in the WACH ICW, owed a duty to Tiona Mulligan to exercise that degree of skill and care ordinarily exercised generally by other physicians in the same or similar circumstances.

44.

Dustin K. Davis, M.D., (and any other physicians in the WACH ICW who provided care and treatment to Tiona Mulligan in the WACH ICW) failed to exercise that degree of skill and care ordinarily exercised generally by physicians in the same or similar circumstances and was / were negligent in his / their care and treatment of Tiona Mulligan in multiple instances to include, but not necessarily limited to the following:

    a.    Failing to order and / or ensure the administration of Lovenox to Tiona Mulligan in the WACH ICW on January 22, 23, and 24, 2018;

b. In the event Lovenox was administered to Tiona Mulligan in the WACH ICW, in failing to order and / or ensure the administration of therapeutic dosages of Lovenox on January 22, 23, and 24, 2018, as opposed to administering merely prophylactic dosages of 40mg;

c. Failing to order and / or ensure the performance of a lower extremity ultrasound on January 22 and / or 23, 2018; and

d. In failing to ensure Tiona Mulligan's transfer out of the WACH ICW to an outside medical facility which could provide a higher level of care on January 22 or 23, 2018 or by very early the morning of January 24, 2018.

45.

As a result of the negligent actions and omissions of Dustin K. Davis, M.D., and any other physicians treating Tiona Mulligan in the WACH ICW on January 22, 23, and / or 24, 2018, as set forth herein, Tiona Mulligan experienced needless pain and suffering from extended hypoxemia and the eventual passage of blood clot traveling from her lower extremity to her pulmonary artery and causing her death between noon and 1:00 p.m. on January 24, 2018.

46.

The non-physician staff within the WACH ICW on February 22, 23, and 24, 2018, violated the applicable standards of care and were negligent in failing to advocate for the administration of Lovenox, administration of the proper therapeutic dosages of Lovenox, the performance of a lower extremity ultrasound, and patient transfer to a higher level of care facility much sooner than was attempted on January 24, 2018.

47.

As a result of the negligent actions and omissions of the WACH ICW non-physician staff

as referenced in the immediately preceding paragraph, Tiona Mulligan experienced conscious pain and suffering and died.

48.

The affidavit of Robert John Holloway, M.D., board certified in Internal Medicine and longtime practicing hospitalist, is attached hereto as "Exhibit E" and incorporated herein by reference. Said affidavit sets forth at least one standard of care deviation of Dustin K. Davis, M.D., and any other personnel within the WACH Intermediate Care Ward (ICW) who would have provided hospitalist / primary medical care to Tiona Mulligan, and any nurses or physician extenders (non-physician WACH ICW staff) who would have provided care and treatment to Tiona Mulligan in the WACH ICW, as set forth pursuant to O.C.G.A § 9-11-9.1.

49.

All such negligence of any employees or agents of the United States / U.S. Army / WACH, including that of Dr. Dustin Davis and other hospitalist / primary medical care providers and any other nurses or physician extenders (non-physician WACH ICW staff) as set forth herein, is hereby as a matter of law imputed to Defendant USA as Dr. Dustin Davis and all other healthcare providers in the WACH ICW were acting within the scope and course of their employment and / or agency with Defendant USA / U.S. Army / WACH at all times material herein.

**CAUSATION**

50.

The allegations set forth in paragraphs 1 through 40 are realleged and incorporated herein by reference.

51.

Had the standards of care set forth within this complaint and the affidavit of John Robert

Holloway, M.D. (Attached hereto as Ex. A and incorporated by reference herein) been met by the Defendant USA via its employees and agents as set forth in the complaint and the incorporated affidavit of John Robert Holloway, M.D., Tiona Mulligan would not have died on January 24, 2018, and would be still alive today.

## DAMAGES

52.

The allegations set forth in paragraphs 1 through 40 are realleged and incorporated herein by reference.

53.

As a result of Defendant USA's negligence as imputed to it from its employees' and/or agents' negligence as set forth herein, including but not limited to Dr. Dustin K. Davis, Tiona Mulligan died, thus giving rise to a claim for her wrongful death of which Henrietta Mulligan as surviving parent and next friend is entitled to be compensated for the full value of the life of Tiona Mulligan. As such, Henrietta Mulligan has filed an administrative claim for her daughter's wrongful death in the amount of three million dollars ($3,000,000.00) against the United States of America / United States Department of the Army / Winn Army Community Hospital.

54.

As a result of Defendant USA's negligence as imputed to it from its employees' and/or agents' negligence as set forth herein, Tiona Mulligan's Estate has been damaged thus giving rise to the estate's claims for her conscious pain and suffering, medical expenses, and funeral and burial expenses collectively valued at $1,000,000.00 as set forth in the corresponding administrative claims filed against the United States of America / United States Department of the Army / Winn Army Community Hospital.

55.

Plaintiff has filed contemporaneously herewith a Disclosure Statement pursuant to S.D. Ga. L.R. 7.1.1.

WHEREFORE, Plaintiff prays:

a. that Defendants be served with the Summons and Complaint in this action;

b. that judgment be entered against Defendant USA in the amount of $3,000,000 in compensation for the full value of the life of Tiona Mulligan;

c. that judgment be entered against Defendant USA in the amount of $1,000,000 in compensation for damages to the Estate of Tiona Mulligan to include conscious pain and suffering, funeral and burial expenses, and any other consequential special damages of the estate; and

d. any other relief legally warranted be granted to Plaintiff.

This 13th day of December, 2022.

**MANLY SHIPLEY, LLP**

Post Office Box 10840  
Savannah, Georgia 31412  
T: (912) 495-5360  
F: (844) 362-4952  
john@manlyshipley.com  
jim@manlyshipley.com  

/s/ John B. Manly  
JOHN B. MANLY  
Georgia Bar No. 194011  
JAMES E. SHIPLEY, JR.  
Georgia Bar No. 116508  
*Attorneys for Plaintiff*

**ARNOLD & STAFFORD**

Post Office Box 339  
Hinesville, Georgia 31310  
T: (912) 369-4529  
cstafford@coastallawyers.com  

/s/ H. Craig Stafford  
H. Craig Stafford  
Georgia Bar No. 673885  
*Attorney for Plaintiff*

## VERIFICATION

I, Henrietta Mulligan, Individually, and as the Co-Administrator of the Estate of Tiona Mulligan, state that I have reviewed the foregoing Complaint, and that the statements and allegations as set forth therein are true and correct to the best of my knowledge, information, and/or belief.

This 13 day of December, 20 22.

*[signature: Henrietta Mulligan]*

Henrietta Mulligan, Individually and as the
Administrator of the Estate of Tiona Mulligan